**ORIGINAL**



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
MAR - 2 2005
CLERK U.S. DISTRICT COURT
By
Deputy

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, : | CASE NO.   MC 05 - 37 |
| Plaintiff, : | 3 - 05 CV 0416 M |
| v. : | FILED UNDER SEAL |
| PREMIUM INCOME CORP., : | COMPLAINT FOR INJUNCTIVE |
| INFOREX, LTD., : | RELIEF, ANCILLARY EQUITABLE |
| TRI-FOREX INTERNATIONAL LTD. : | RELIEF, AND CIVIL MONETARY |
| also known as : | PENALTIES FOR VIOLATIONS OF |
| TRI-FOREX, LTD. and : | THE COMMODITY EXCHANGE |
| INTERNATIONAL FOREX COMPANY, : | ACT, 7 U.S.C. § 1 *ET SEQ.* |
| GERALD LEO ROGERS : | |
| also known as : | |
| JAY ROGERS AND JAY RODGERS, and : | |
| ALEXANDER IGOR SHEVCHENKO, : | |
| Defendants. | |

Certified a true copy of an instrument
on file in my office on 3-4-05
Clerk, U.S. District Court,
Northern District of Texas
By _____ Deputy

1

## SUMMARY

1.    From at least January 2004 to the present, defendants have engaged in a fraudulent scheme to solicit members of the public throughout the United States to send them millions of dollars for the purpose of engaging in illegal foreign currency option transactions. Defendants represent that they have over $80 million under management.

2.    Defendant Gerald Leo Rogers ("Rogers") directly or indirectly controls the illegal activities of the other defendants and is an ongoing economic threat to society. Rogers has a three-decade history of committing cunning white collar offenses, and has



FILED
MAR - 8 2005
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

defrauded the public in various multi-million dollar scams involving false investment programs, fictitious companies and products, and offshore bank accounts designed to keep funds away from both hapless customers and the United States government.

3.      In 1977 and 1990, Rogers was permanently enjoined from further violations of the registration and antifraud provisions of the federal securities laws by the United States District Courts for the Central District of California. In 1987, Rogers was convicted of mail and tax fraud in the Central District of California in connection with another fraudulent scheme. Rogers, who had been free on bond, failed to appear for sentencing, and was given a 10 year prison term and an additional five years' probation *in absentia*. Rogers remained a fugitive until January 1990, when he was apprehended in Zurich, Switzerland in the possession of a false passport.

4.      In yet another criminal action, in 1990 Rogers was convicted of mail fraud, wire fraud, and tax fraud by the United States District Court for the District of Colorado, and sentenced to 25 years' imprisonment. According to the indictment, Rogers defrauded thousands of investors into parting with approximately $79 million. He was paroled on December 24, 2003, after serving 13 years.

5.      Within 30 days of his December 2003 release from prison, Rogers orchestrated his latest financial scam, as alleged herein.

6.      Rogers has previously been enjoined from the illegal commodity option activities alleged herein. In 1990, the CFTC and the State of California jointly filed an injunctive action against Rogers for conducting unlawful, off-exchange commodity option transactions. In 1993, the United States District Court for the Central District of

2

California permanently enjoined Rogers and the companies he controlled from engaging in that conduct.

7.     In the current scheme, Rogers and the other defendants solicit customers to send them funds by representing that customer funds will be used to engage in foreign currency covered call transactions, and that customers will be guaranteed a profitable annual return on their funds of between 10% and 14.2% with no risk of loss to their principal. Defendants represent that they make their "fixed income strategy of the decade" available exclusively in the United States under a special license agreement between defendants and a bank located in Switzerland.

8.     Contrary to defendants' representations to customers, even if customer funds are invested as promised, defendants cannot guarantee fixed profits. Further, the risk of loss may be substantial in connection with foreign currency covered call transactions.

9.     By falsely representing to customers that foreign currency covered call transactions produce guaranteed profits with no risk of loss to principal, defendants have fraudulently solicited individuals to send funds to accounts under their control at various domestic and offshore banks, and misappropriated customer funds.

10.     Defendants represent that customer funds will be deposited into individual Premium Income Corporation ("PIC") accounts and used exclusively for foreign currency option transactions. Although customer funds are initially deposited in bank accounts in the name of PIC, defendants do not disclose to customers that their funds are immediately transferred from the PIC bank accounts to a domestic bank account in the name of Inforex, Ltd. ("Inforex") under the sole control of Rogers, and then transferred to

3

offshore bank accounts in the name of Inforex. Defendants make monthly payments to some customers from the domestic Inforex bank account, and represent that those funds are derived from foreign currency option transactions taking place offshore. However, the Inforex domestic account that defendants use to make monthly payments to customers contains no funds that have been deposited either from offshore bank accounts or from trading accounts representing putative trading profits for customers. It appears that defendants are paying customers using the funds deposited by other customers in a classic "Ponzi" scheme.

11.     Defendants represent that they engage in foreign currency option transactions through an agreement they have with a Swiss bank called Union Bank Inter.net. In fact, Union Bank Inter.net is not physically located in Switzerland and is not registered with the Swiss Federal Banking Commission, as required by Swiss law. Its website is registered to a business located in Scottsdale, Arizona, and is paid for by credit cards in the name of Rogers and Inforex.

12.     Defendants represent that customer funds will be entirely used to conduct covered call option transactions and will not be used for any other purpose. Contrary to that claim, customer funds are routinely transferred to domestic accounts under the control of Rogers and Shevchenko and offshore accounts under Rogers's control. At least a portion of those funds are used for purposes unrelated to foreign currency options trading, including, but not limited to, the payment of personal expenses and the undisclosed payment of commissions to individuals who solicit customers on behalf of the defendants.

4

13.     Defendants have engaged, are engaging, or are about to engage in acts and practices that violate the antifraud and designated contract market provisions of the Commodity Exchange Act, as amended ("Act"), 7 U.S.C. § 1 *et seq.* (2002), and the Regulations of the United States Commodity Futures Trading Commission ("CFTC"), 17 C.F.R. § 1.1 *et seq.* (2004).

14.     By making material misrepresentations and omissions about profits, risk of loss, and defendants' own expertise in connection with trading foreign currency option transactions and by misappropriating customer funds, defendants have violated the antifraud provisions of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2002), and CFTC Regulations 1.1(b) and 32.9, 17 C.F.R. § 1.1(b) and 32.9 (2004).

15.     By offering, selling, entering into, confirming the execution of, and/or conducting a business for the purpose of soliciting, accepting any order for or otherwise dealing in off-exchange foreign currency option contracts that are not conducted on or subject to the rules of a board of trade designated or registered by the CFTC as a designated contract market or derivatives transaction execution facility for such commodity, and executed or consummated by or through a designated contract market, defendants have violated the designated contract market provisions of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2002), and CFTC Regulation 32.11 (2004).

16.     Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2002), plaintiff CFTC brings this action to enjoin defendants' commodity-related unlawful acts and practices, to bar them from engaging in any commodity-related activities, and to compel their compliance with the Act and the CFTC Regulations. In addition, the CFTC seeks civil monetary penalties, an accounting, restitution to investors, disgorgement of

defendants' ill-gotten gains, identification and repatriation of assets located outside the United States, the surrender of passports, the appointment of a temporary and permanent receiver if necessary, and such other relief as this Court may deem necessary or appropriate.

17.    Unless restrained and enjoined by this Court, defendants are likely, and will continue, to engage in the acts and practices alleged in this Complaint or in similar acts and practices, as more fully described below.

## II.

### JURISDICTION AND VENUE

18.    This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which provides that whenever it shall appear to the CFTC that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the CFTC may bring an action against such person to enjoin such practice or to enforce compliance with the Act.

19.    Pursuant to Section 2(a)(1)(A) of the Act, 7 U.S.C. § 2(a)(1)(A) (2002), the CFTC has exclusive jurisdiction over transactions involving commodity options such as the transactions alleged herein. Section 4c(b) of the Act, 7 U.S.C. § 6c(b) and Regulation 32.11, 17 C.F.R. §32.11 require that those transactions be conducted on, by, or through a designated contract market or a derivatives transaction execution facility.

20.    Section 2(c)(2)(B) of the Act, 7 U.S.C. § 2(c)(2)(B) (2002), expressly clarifies that the CFTC has jurisdiction over contracts involving foreign currency options, as alleged herein, where the contract is offered to, or entered into with, a person that is

not an eligible contract participant, unless the counterparty is one of the six regulated

entities listed in Section 2(c)(2)(B)(ii) of the Act, 7 U.S.C. § 2(c)(2)(B)(ii).

      21.    Section 1a(12)(A)(xi) of the Act, 7 U.S.C. § 1a(12)(A)(xi) (2002) defines

an eligible contract participant as an individual who has total assets in excess of "(I) $10

million; or (II) $5 million, and who enters into the agreement, contract, or transaction in

order to manage the risk associated with an asset owned or liability incurred, or

reasonably likely to be owned or incurred, by the individual." The Commission has

jurisdiction over the contracts at issue because, on information and belief, a substantial

number, if not most, of the customers defendants have solicited to enter into foreign

currency option transactions are members of the retail investing public and are not

eligible contract participants.

      22.    Further, none of the defendants is one of the six proper counterparties as

enumerated in Section 2(c)(2)(B)(ii) of the Act, 7 U.S.C. § 2(c)(2)(B)(ii), who may offer

and/or enter into foreign currency option transactions with persons who are not eligible

contract participants.

      23.    Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7

U.S.C. § 13a-1(e), because defendants are found in, inhabit, or transact business in the

Northern District of Texas, and the acts and practices in violation of the Act have

occurred within this District, among other places.

## III.

## THE PARTIES

**A.    Plaintiff**

24.    Plaintiff **United States Commodity Futures Trading Commission** ("CFTC") is the independent federal regulatory agency charged with the administration and enforcement of the Act, 7 U.S.C. § 1 *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R. § 1.1 *et seq.*

**B.    Defendants**

25.    Defendant **Premium Income Corporation** ("PIC") is a corporation that was registered in the State of Wyoming on January 20, 2004.  PIC lists its addresses as 2470 Westlake Avenue North, Suite 104, Seattle, WA 98109 and 2400 NW 80th Street, Suite 139, Seattle, WA 98117.  PIC lists Inforex, Ltd. as its principal.  PIC also represents that it is a wholly owned subsidiary and the USA division of Tri-Forex International, Ltd. PIC maintains an Internet website at www.premiumincomecorp.com.  PIC represents that it specializes in writing call options on foreign currency through its international network of currency exchange brokers.  PIC further represents that it makes this investment available exclusively in the United States under a license agreement with Union Bank Inter.net ("UBI").  According to PIC, UBI is located in Switzerland and is a wholly owned subsidiary of the "Churchill Bank Group serving in the United Kingdom with facilities in England, Denmark, Australia, Japan and elsewhere."  PIC has never been

currency trading, and gives a corporate address of 4300 North Miller Road, Scottsdale, AZ 85251. In May 2004, Inforex registered to do business in the State of Washington at 2470 Westlake Avenue North, Suite 104, Seattle, Washington 98109, which is the same business address as PIC's.

27.     Defendant **Tri-Forex International, Ltd.** also known as Tri-Forex Ltd. and International Forex Company ("Tri-Forex") represents that it is a company located in London, England, with offices in Sydney, Tokyo, and Seattle. Tri-Forex lists its business address in Seattle, Washington as 2470 Westlake Avenue North, Suite 104, Seattle, Washington 98109, which is the same business address as PIC's. Tri-Forex claims to be "the world's leading company for the funding of Currency Tax Strategies in the United States." Contrary to these representations, the governments of the United Kingdom, Australia, and the State of Washington have no records showing that Tri-Forex has registered to do business in their jurisdictions. Tri-Forex has never been registered with the CFTC in any capacity.

28.     Defendant **Gerald Leo Rogers,** also known as Jay Rogers and Jay Rodgers ("Rogers"), maintains an address at 8517 West Rockwood Drive, Peoria, Arizona. Rogers directly or indirectly controls PIC, Inforex and Tri-Forex, and is the mastermind of the fraudulent scheme alleged herein. Rogers is the chief operating officer for Inforex's business operations in the United States and is authorized to be the sole signatory on Inforex's bank accounts in the United States. Rogers is also a signatory on PIC bank accounts. Rogers has a commodity fraud, securities fraud, and criminal fraud history that spans almost three decades. Rogers has never been registered with the CFTC in any capacity.

29.    Defendant **Alexander Igor Shevchenko** ("Shevchenko") maintains a residence address at 414 NW 180th Street, Shoreline WA98177. Shevchenko is the manager of PIC's Seattle business operation and is an authorized signatory on PIC bank accounts. Shevchenko has never been registered with the CFTC in any capacity.

## IV.

## STATUTORY AND REGULATORY REQUIREMENTS

30.    Pursuant to Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and CFTC Regulations 1.1(b) and 32.9, 17 C.F.R. §§ 1.1(b) and 32.9, it is unlawful for any person to cheat or defraud or to attempt to cheat or defraud any person, willfully to make or cause to be made any false report or statement, or willfully to deceive or attempt to deceive any person in or in connection with commodity option transactions.

31.    Pursuant to Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and CFTC Regulation 32.11, 17 C.F.R. §§ 32.11, it is unlawful for any person to offer to enter into, to enter into, to execute, to confirm the execution of, or to conduct any office or business for the purpose of soliciting, or accepting any order for, or otherwise dealing in any transaction in or in connection with commodity options, unless such transaction is conducted on or subject to the rules of a contract market designated to trade commodity options, or a foreign board of trade, or specifically exempted under the Act.

32.    Section 2(c)(2)(B)of the Act, 7 U.S.C. § 2(c)(2)(B) (2002), grants the Commission jurisdiction over transactions involving a person that is not an eligible contract participant unless the counterparty, or person offering to be the counterparty of the person is:

        (I)              a financial institution . . .,

(II)        a broker or securities dealer or futures commission merchant…,

(III)       an associated person of a broker or dealer or an affiliated person of

a futures commission merchant…,

(IV)       an insurance company…,

(V)        a financial holding company,

(VI)       an investment bank holding company.

33.    Section 1a(12)(A)(xi) of the Act, 7 U.S.C. § 1a(12)(A)(xi) (2002) defines

an eligible contract participant as an individual who has total assets in excess of "(I) $10

million; or (II) $5 million, and who enters into the agreement, contract, or transaction in

order to manage the risk associated with an asset owned or liability incurred, or

reasonably likely to be owned or incurred, by the individual."

## V.

## FACTS

### A.    Defendants Have Committed Widespread Fraud In Connection With Foreign Currency Option Transactions

34.    From at least 2004 and continuing through the present, Rogers and the

other defendants, either directly or through other persons or entities under their employ,

supervision and control, or acting in combination or concert with them, or by

participating or materially aiding in the offers and sales of commodity options, have

participated in a fraudulent scheme to solicit retail customers throughout the United

States and elsewhere to send funds to them for the purpose of engaging in foreign

currency covered call option transactions traded in the foreign exchange markets

("forex"). Defendants fraudulently obtain funds from customers by making

11

misrepresentations and omissions of material fact about profit, risk of loss, and their experience in connection with trading options on foreign currency.

### i. Covered Call Writing

35.     A "call" is one of two types of commodity options, and conveys to the buyer the right (but not the obligation) to purchase a specific commodity or other asset at a particular price during a specified period of time. The price for which the commodity can be bought (in the case of a call) under the terms of the option contract is referred to as the option's strike price or exercise price. The date on which an option expires--the date after which it can no longer be exercised--is the option's "expiration date." "European style" options – the type involved in the covered call transactions offered by PIC – can only be exercised on the expiration date. The price of an option itself, *i.e.*, the sum of money or other consideration paid by the buyer of an option and received by the seller of an option, is the option's "premium."

36.     The option seller's or writer's potential for profits is limited to the amount of the premium received for sale of the option. The potential for losses, however, is virtually unlimited. For example, the seller or writer of a call option on a given commodity will realize a profit in the amount of the premium received if the commodity price never rises above the strike price of the option, since the option will expire unexercised. To the extent that the commodity price rises above the strike price by an amount that more than offsets the original premium income, and continues to rise as expiration of the option approaches, however, the call option seller stands to lose ever-increasing amounts.

37.     Covered calls are call options sold, or written, against an asset that one owns (called "cover"). If the covered call is ever exercised by the holder of the option,

the writer of the option can satisfy the exercise by delivering the cover. In essence, the covered call writer exchanges the opportunity to participate in potential increases in the value of the asset that he uses for cover for the option premium that is received from the sale of the call option. In the scheme alleged in this complaint, the defendants purported to write call options valued against a foreign currency rate and covered by an asset consisting of U.S. dollars.

38.    The risk retained by the covered call writer is that the value of the asset that provides cover may decrease in value by more than the amount of the premium received from writing the option. In the extreme, the covered call writer could lose the entire value of the cover and be left with only the premium.

### ii. Scope Of Defendants' Fraudulent Scheme

39.    Within the last six months, defendants have solicited customers to open accounts with PIC for the purpose of engaging in foreign currency covered call transactions. Calling their scheme the "Fixed Income Strategy of the Decade," defendants have aggressively marketed their fraudulent scheme to the public through public seminars, direct mailings, public advertisements, and the Internet websites www.premiumincomecorp.com ("PIC Website"), www.premiumincomebrokers.com ("PIB Website"), and www.unionbankinter.net (UBI Website").

40.    Defendants especially target retired persons to send funds to PIC. Defendants represent that speculation in stocks could be a recipe for disaster for persons who are retired or approaching retirement age, and that PIC's "guaranteed locked-in profits" represents the solution to their fixed-income dilemma. Defendants further

13

represent that PIC's purported locked-in profits "will almost always out-perform Government bonds, bank CDs and money market accounts."

41.    The scheme the defendants have promoted is as follows:  PIC offers an investment at its seminars, and through its brochure and web-site, entitled "Writing Covered Calls on Currency Deposits," through which PIC represents that it sells covered currency calls on the investor's behalf to a speculator.  Under the covered call, an investor deposits currency (U.S. dollars) with PIC, and is paid upfront premiums by a speculator who receives a call option granting him the right, but not the obligation, to buy the investor's currency deposit in exchange for Euros at the prevailing exchange rate at either a 5 year or 10 year expiration date.  The currency calls purportedly are written with European option terms, which differ from American terms, in that the European call cannot be exercised until the expiration date.  The solicitation material claims that in writing covered calls on behalf of its customer, PIC will "never place your deposit(s) at risk." To give the customer the appearance of safety, PIC's brochure emphasizes that the customer is not the "speculator" in this transaction.

42.    Defendants have perpetuated their fraudulent scheme by actively recruiting financial planners, insurance agents, and other persons throughout the United States to become PIC brokers.  Defendants enter into written broker agreements with such persons, designating them as new "Area Brokers" for PIC.  The agreements provide that PIC will pay an Area Broker 10% of the gross funds deposited by a customer with PIC to purchase 5 or 10 year foreign currency covered call options.  In the manner of a pyramid scheme, the agreements also provide that PIC will pay an Area Broker a 10%

override commission based on the gross commission of each person they personally recruited for PIC to act as an Area Broker.

43.    Defendants represent that they recruited 100 Area Brokers in 2004, the majority recruited during the last quarter of 2004. In February 2005, defendants represented that they had recruited over 140 Area Brokers.

44.    Defendants, acting in concert with Area Brokers, represent that they have solicited customers to send them at least $80 million for the purpose of engaging in foreign currency covered call transactions. In an effort to entice Area Brokers to solicit customers, defendants have represented that Rogers personally handles a $30 million account to sell covered call transactions on foreign currency for Microsoft.

45.    Defendants direct Area Brokers to instruct customers to send their funds to domestic bank accounts in the name of PIC, including, but not limited to, Chase Bank in Texas and New York, Bank One in Arizona, and Asia-Europe-Americas Bank in Washington. Customer funds deposited into the domestic PIC bank accounts are immediately transferred to a domestic bank account controlled by Rogers in the name of Inforex. The vast majority of funds in the domestic Inforex account are then transferred to offshore bank accounts in the name of Inforex.

### iii. Material Misrepresentations And Omissions Concerning Profit

46.    In soliciting customers, defendants represent that they have an exclusive licensing agreement with a foreign bank whereby they are able to guarantee customers a monthly fixed income amounting to between 10% and 14.2 % in annual profits. Defendants guarantee customers a 1.1 % monthly return which annualizes to 13.2% on customer funds used to write a 10 year foreign currency covered call option. Defendants

15

represent that, on the expiration date of a 10 year option, customers will receive their deposit back and a sum representing "10% Value Added," equaling a total maturity of 14.2 %. Defendants also guarantee customers a 10 % annual return, representing a 0.83 % monthly return, on customer funds used to write a 5 year foreign currency covered call option.

47.     Defendants claim that PIC will use customer funds to sell foreign currency covered calls and never place those funds at risk. Defendants represent to customers that selling foreign currency covered calls is a "totally non-speculative and passive way to diversify your liquid assets for the dual purposes of creating a spendable, tax-free monthly cash flow and deferring taxes on capital gains until the year following the Expiration Date [of the option], whether it be a 5-Year or 10-Year Currency Call."

48.     Contrary to their representations to customers, profits on covered call options strategies cannot be guaranteed. Profits cannot be guaranteed because the writing of covered calls on a foreign currency position exposes customer funds to the risk of partial or complete loss on the underlying currency as a result of changes in the currency exchange rates prior to the expiration date of the option.

### iv. Material Misrepresentations And Omissions Concerning Risk Of Loss

49.     In addition to profit misrepresentations, defendants have misrepresented the risk of loss associated with selling foreign currency covered call options by making material statements minimizing the risk of loss inherent in foreign currency options.

50.     Through the PIC and PIB websites, and oral and written representations to Area Brokers, defendants have claimed that little or no risk is involved in selling covered

16

currency calls.  Defendants represent that "Premium Income Corp will write and Sell Currency Calls for you, yet never place your deposit(s) at risk."

51.    Defendants' representations of no risk of loss to customers are materially false and they omit to inform customers of material facts impacting risk of loss. Defendants fail to inform customers that writing covered calls on foreign currency has substantial downside risks.  Specifically, Defendants fail to disclose to customers that the risk facing the foreign currency covered call writer is that the price of the currency will rise by an amount greater than the option premium received from the sale of the call option.

52.    Defendants misrepresent the significant risk of loss in writing covered calls on foreign currency by falsely stating that there is no risk of loss to customer funds because the risk is the same as the buying power of the dollar.  Defendants fail to inform customers that writing covered calls has substantial downside risk that goes far beyond that of the buying power of the dollar.

v.    **Material Misrepresentations and Omissions Concerning Expertise And Experience**

53.    Defendants make numerous misrepresentations and omissions of material fact in connection with their experience and expertise in foreign currency option transactions.  Specifically, defendants fraudulently misrepresent and fail to disclose -- particularly in light of affirmative and misleading representations they make on the same subjects -- significant facts about their background, trading ability, the nature of their professional trading experience, and the nature of their trading operations.

54.    Defendant Rogers represents that he recently formed PIC to conduct foreign currency option transactions for persons in the United States on behalf of Tri-

Forex. Rogers further represents that he previously lived for 15 years in Europe and worked on foreign currency option transactions at Tri-Forex. In fact, Rogers has been in prison for 13 of the last 14 years, and prior to that was a fugitive in Europe. Rogers has not disclosed that he is currently on parole in connection with a 25 year criminal sentence for investment fraud. Rogers also has not disclosed that he has numerous civil and criminal convictions for investment fraud over the last 30 years.

55.    Defendants represent that PIC has an exclusive license agreement with UBI. Defendants state that UBI is domiciled in Switzerland and is a wholly owned subsidiary of the "Churchill Bank Group serving in the United Kingdom with facilities in England, Denmark, Australia, Japan and elsewhere." Contrary to these representations, neither UBI nor the Churchill Bank Group is listed as a bank or authorized to do business in the United Kingdom, England or Australia. Further, defendants represent that UBI has a business address in Scotland that is, in fact, a residential apartment address unrelated to any business operations of UBI. Defendants fail to disclose that UBI's website is registered to a business located in Scottsdale, Arizona, and is paid for by credit cards in the name of Rogers and Inforex.

56.    Defendants represent that PIC is a wholly owned subsidiary of Tri-Forex and that Tri-Forex is located in London, England with other locations in Sydney, Tokyo, and Seattle. Defendants further represent that Tri-Forex specializes in writing international currency call options through its international network of currency exchange brokers, and has over 40 years experience. Contrary to these representations, Tri-Forex has no registered business address and is not authorized to do business in London, England, Sydney or Seattle.

57.    Defendants represent that "100% of your deposit is dedicated to 'Selling' $1,000 Covered Calls." Contrary to defendants' representation, 10% of customer deposits are paid to Area Brokers in commissions that are not disclosed to the customers, thus immediately impairing the profit potential of their investments. Customer funds are also transferred to onshore and offshore bank accounts in the name of Inforex that are solely under Rogers' control.

### vi. Misappropriation Of Customer Funds

58.    Defendants represent that all customer funds will be deposited into "PIC Account" and used only for the purpose of selling covered calls on foreign currency. In fact, defendants have misappropriated customer funds by using them to pay commissions to Area Brokers and pay expenses unrelated to foreign currency option transactions.

59.    Defendants have directed at least some customers to make deposits in accounts in the name of PIC at Asia Europe Americas Bank ("AEA Bank"), J.P. Morgan Chase Bank ("Chase Bank"), and Bank One for the purpose of conducting foreign currency covered call transactions. The PIC account at Bank One was opened in January 2004, the PIC account at AEA Bank was opened in July 2004, and the two PIC accounts at Chase Bank were opened in November and December 2004. Since January 2004, approximately $8.5 million has been deposited into these PIC bank accounts.

60.    Defendants represent that customer funds will be deposited into individual PIC accounts and used exclusively for foreign currency covered call transactions. Defendants further represent that customer funds will be transferred to a Swiss bank called UBI for the purpose of engaging in foreign currency covered call transactions. As previously alleged, UBI is not registered as a Swiss bank and no funds are transferred

from PIC bank accounts to UBI. In fact, although customer funds are initially deposited in bank accounts in the name of PIC at Bank One, AEA Bank, and Chase Bank, defendants do not disclose to customers that their funds are immediately transferred from these PIC bank accounts to a domestic bank account in the name of Inforex at AEA Bank under the sole control of Rogers and then transferred to offshore bank accounts in the name of Inforex at Saxo Bank in Denmark and Synthesis Bank in Switzerland.

61.    Defendants make monthly payments to some customers from the domestic Inforex bank account at AEA Bank and represent that those funds are derived from foreign currency option transactions taking place off-shore. However, no funds from either offshore bank accounts or trading accounts representing putative trading profits, including the Inforex accounts at Saxo Bank and Synthesis Bank, have been deposited in the Inforex domestic account at AEA Bank that defendants use to pay customers monthly payments.

62.    Defendants have transferred most of the funds deposited into the PIC accounts at Bank One, AEA Bank and Chase Bank to an account in the name of Inforex at AEA Bank, an account under the sole control of Rogers. Defendants have transferred approximately $370,000 of customer funds deposited in the Inforex account at AEA Bank to an account in the name of PIC at Global Cash Card ("Global"). Global is a company that provides prepaid ATM cash debit cards to its customers. Defendants issue Global debit cards to Area Brokers who use the cards to obtain commissions from the funds deposited by defendants with Global.

63.    Defendants transfer a portion of customer funds deposited in the Inforex account at AEA Bank to an account in the name of Inforex at Compass Bank under the

sole control of Rogers. Customer funds from this account have been used to pay Roger's personal and business expenses.

64.    Defendants use a portion of customer funds deposited in the PIC account at Bank One to pay personal and business expenses. Defendants also use funds from this account to pay broker commissions.

**B.    Defendants Have Engaged In Illegal Off-Exchange Option Transactions**

65.    Defendants solicit persons to send them funds for the purpose of engaging in foreign currency covered call transactions. Defendants represent to customers that PIC will write and sell foreign currency call options on behalf of customers.

66.    Defendants enter into account agreements between PIC and customers providing that customer accounts established with PIC "shall be for the writing (selling) of covered calls." The customer account agreements further provide that PIC will verify the foreign currency covered call transaction with the customer by a same-day confirmation, upon receipt of the customer's funds and executed account agreement.

67.    Defendants do not offer, sell, enter into, confirm the execution of, and/or their conduct business of soliciting, accepting any order for or otherwise dealing in off-exchange foreign currency option transactions on or subject to the rules of a contract market or foreign board of trade, nor any of these transactions executed or consummated by or through a member of such a contract market or foreign board of trade.

68.    Section 2(c)(2)(B)(i) and (ii) of the Act, 7 U.S.C. § 2, provides that the CFTC shall have jurisdiction over an agreement, contract or transaction in foreign currency that is an option, so long as the contract is "offered to, or entered into with, a

person that is not an eligible contract participant" unless the counterparty, or the person offering to be the counterparty, is a specified regulated entity.

69.     Defendants have been offering and/or entering into foreign currency option transactions with individual customers, some or all of whom, on information and belief, are non-eligible contract participants, i.e., retail customers.

70.     Defendants deposit customer funds in domestic PIC accounts and transfer most of those funds to domestic and off-shore accounts in the name of Inforex under the sole control of Rogers. Defendants issue monthly "profits" to customers from the Inforex accounts that are purportedly derived from covered call options transactions. By such conduct, defendants are acting as counterparties to the customers' options transactions. Neither Rogers nor any of the other defendants is a proper counterparty for retail foreign currency option transactions as enumerated in Section 2(c)(2)(B)(ii) of the Act, 7 U.S.C. § 2.

## VI.

## VIOLATIONS OF THE COMMODITY EXCHANGE ACT
## AND THE CFTC REGULATIONS

### COUNT I

### FRAUD IN CONNECTION WITH OPTION TRANSACTIONS

### VIOLATIONS OF SECTION 4c(b) OF THE ACT, 7 U.S.C. § 6c(b), AND SECTIONS 1.1(b) AND 32.9 OF THE REGULATIONS, 17 C.F.R. §§ 1.1(b) AND 32.9

71.     Paragraphs 1 through 70 above are realleged and incorporated herein by reference.

72.     From at least January 2004 and continuing through the present, defendants, either directly or through other persons or entities either under their employ, supervision and control or acting in combination or concert with them, violated Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Sections 1.1(b) and 32.9 of the Regulations, 17 C.F.R. §§ 1.1(b) and 32.9, in that they have cheated, defrauded or deceived, or attempted to cheat, defraud, or deceive other persons by making false, deceptive, or misleading representations of material facts and by failing to disclose material facts, in soliciting customers or potential customers, in or in connection with an offer to enter into, the entry into, or the confirmation of the execution of commodity option transactions including, but not limited to:

(a)     false representations that customers who purchase options on foreign currency will be guaranteed profits of between 10% and 14.2%;

(b)     false representations that writing foreign currency covered call options involves little or no risk;

23

(c)     false representations that customer funds are being used to purchase and sell foreign currency options;

(d)     false representations that purported option transactions are generating significant profits;

(e)     failure to disclose the substantial risk associated with foreign currency options;

(f)     failure to disclose material facts regarding trading practices, commissions, and background of defendants, particularly in light of misleading affirmative statements made on those issues; and

(g)     misappropriation of customer funds.

73.     From at least January 2004 and continuing through the present, Rogers and Shevshenko directly or indirectly controlled PIC and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting the violations described in this Count.  Pursuant to Section 13(b) of the Act, Rogers and Shevshenko are therefore liable for PIC's violations of the Act and Regulations as described in this Count.

74.     From at least January 2004 and continuing through the present, Rogers directly or indirectly controlled Inforex and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting the violations described in this Count. Pursuant to Section 13(b) of the Act, Rogers is therefore liable for Inforex's violations of the Act and Regulations as described in this Count.

75.     Defendants Rogers and Shevshenko willfully aided, abetted, counseled, commanded, induced, or procured the commission of violations of the Act and Regulations alleged in this Count, or acted in combination or in concert with each other, or willfully caused acts to be done or omitted which when directly performed or omitted constituted violations of the Act and Regulations described in this Count.  Pursuant to

Section 13(a) of the Act, 7 U.S.C. § 13c(a), defendants Rogers and Shevshenko therefore violated Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulations 1.1(b) and 32.9, 17 C.F.R. §§ 1.1(b) and 32.9, as described in this Count.

76.    Defendants Rogers and Shevshenko engaged in the illegal conduct alleged in this Count within the scope of their offices or employment as agents of defendant PIC. Pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), defendant PIC is therefore liable as a principal for the violations of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulations 1.1(b) and 32.9, 17 C.F.R. §§ 1.1(b) and 32.9, by its agents Rogers and Shevshenko.

77.    Each misrepresentation of material facts and each failure to disclose material facts including, but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4c(b)of the Act, 7 U.S.C. § 6c(b), and Regulations 1.1(b) and 32.9, 17 C.F.R. §§ 1.1(b) and 32.9.

## COUNT II

### OFFER AND SALE OF ILLEGAL OFF EXCHANGE OPTION CONTRACTS

#### VIOLATIONS OF SECTION 4c(b) OF THE ACT, 7 U.S.C. § 6c(b) AND REGULATIONS 32.11, 17 C.F.R. § 32.11

78.    Paragraphs 1 through 77 are re-alleged and incorporated herein.

79.    Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Section 32.11 of the Regulations, 17 C.F.R. §§ 32.11, together provide that it shall be unlawful for any person to solicit or accept orders for, or accept funds in connection with, the purchase or sale of any commodity option, or supervise any person or persons so engaged, unless the commodity option is conducted (1) on or subject to the rules of a contract market which

has been designated by the Commission to trade options and (2) by or through a member thereof in accordance with the Act and Regulations.

80.    From at least January 2004 to the present, defendants, and other persons or entities under their supervision or control, or acting in combination or concert with them, have solicited and/or accepted orders for, and/or accepted money, securities or property in connection with, the purchase and sale of commodity options when such transactions have not been conducted or executed on or subject to the rules of a contract market, or a foreign board of trade in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Section 32.11 of the Regulations, 17 C.F.R. § 32.11.

81.    Defendants Rogers and Shevshenko willfully aided, abetted, counseled, commanded, induced, or procured the commission of violations of the Act and Regulations described in this Count, or acted in combination or in concert with each other, or willfully caused acts to be done or omitted which when directly performed or omitted constituted the violations described in this Count.  Pursuant to Section 13(a) of the Act, 7 U.S.C. § 13c(a), defendants Rogers and Shevshenko violated of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Section 32.11 of the Regulations, 17 C.F.R. §§ 32.11, as described in this Count.

82.    Defendants Rogers and Shevchenko directly or indirectly controlled PIC, and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting the violations described this Count.  Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), defendants Rogers and Shevchenko are liable for the violations of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 32.11 17 C.F.R. § 32.11, as described in this Count, to the same extent as PIC.

83.    Defendant Rogers directly or indirectly controlled Inforex, and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting the violations described this Count. Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), defendant Rogers is liable for the violations of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 32.11, 17 C.F.R. § 32.11, as described in this Count, to the same extent as Inforex.

84.    Defendants Rogers and Shevchenko engaged in the illegal conduct alleged in this Count within the scope of their offices or employment as agents of defendant PIC. Pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), defendant PIC is liable as a principal for the illegal conduct of its agents defendants Rogers and Shevchenko.

85.    Defendant Rogers engaged in the illegal conduct alleged in this Count within the scope of his office or employment as an agent of defendant Inforex. Pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), defendant Inforex is liable as a principal for the illegal conduct of its agent Rogers.

86.    Each commodity option transaction not conducted on a designated contract market made during the relevant time period, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Section 32.11 and of the Regulations, 17 C.F.R. §§ 32.11.

## VII.

### RELIEF REQUESTED

WHEREFORE, plaintiff CFTC respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to the Court's own equitable powers:

A.    Enter orders of preliminary and permanent injunction enjoining defendants and all persons insofar as they are acting in the capacity of agents, servants, employees, successors, assigns, or attorneys of defendants, and all persons insofar as they are acting in active concert or participation with defendants, from directly or indirectly engaging in conduct that violates the provisions of the Act and the CFTC Regulations alleged herein;

B.    Enter an order prohibiting defendants, all persons insofar as they are acting in the capacity of agents, servants, employees, successors, assigns, or attorneys of defendants, and all persons insofar as they are acting in active concert or participation with defendants, who receive actual notice of the order, by personal service or otherwise, from directly or indirectly:

      1.    Destroying, mutilating, concealing, altering or disposing of any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records, or other property of defendant, wherever situated, including, but not limited to, all such records concerning defendant's business and banking operations; and

      2.    Refusing to permit authorized representatives of the CFTC to inspect, when and as requested, any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape

records or other property of defendants, whenever located, including all

such records concerning defendants' business operations.

C.    Enter an order prohibiting defendants, all persons insofar as they are acting in the

capacity of agents, servants, employees, successors, assigns, or attorneys of defendants,

and all persons insofar as they are acting in active concert or participation with

defendants who receive actual notice of the Order by personal service or otherwise, from

directly or indirectly:

1.    Soliciting or accepting any funds from any person in connection with the

purchase or sale of any commodity interest contract;

2.    Placing orders or giving advice or price quotations, or other information in

connection with the purchase or sale of commodity interest contracts for

themselves and others;

3.    Introducing customers to any other person engaged in the business of

commodity interest trading;

4.    Issuing statements or reports to others concerning commodity interest

trading; and

5.    Engaging in any business activities related to commodity interest trading.

D.    Enter an order directing defendants to make an accounting to the Court of all

assets and liabilities, together with all funds received from and paid to investors and other

persons in connection with the acts and practices alleged in this Complaint, and all

disbursements for any purpose whatsoever of funds received from customers of

defendants and other commodity or security interest investors, including salaries,

commissions, fees, loans and other disbursements of money and property of any kind;

29

E.    Enter an order directing defendants immediately to identify and provide an accounting for all assets and financial accounts they currently maintain or control, either directly or indirectly, outside the United States, and to repatriate all such assets and funds by paying them to the Registry of the Court or as otherwise ordered by the Court;

F.    Enter an order requiring defendants to disgorge to any officer appointed and directed by the Court all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues and trading profits derived, directly or indirectly, from the unlawful acts and practices as described herein, including pre-judgment and post-judgment interest.

G.    Enter an order requiring defendants to make restitution for harm caused by violations of the provisions of the Act and the CFTC Regulations as described herein, including pre-judgment and post-judgment interest.

H.    Enter an order requiring defendants to pay civil monetary penalties under Section 6c of the Act, 7 U.S.C. § 13a-1, in amounts not more than the higher of $120,000 for each violation, or triple the monetary gain to defendants for each violation of the Act;

I.    Enter an order directing defendants to cooperate fully with the CFTC to locate all assets, books, and records of defendants and to make an accounting of all assets and liabilities of defendants from January 2002 to the date of such accounting; and

J.      Such other equitable relief as the Court may deem necessary or appropriate under

the circumstances.

Respectfully submitted by,

_____

Richard P. Roelber
Daniel Nathan
Attorneys for Plaintiff
United States Commodity
Futures Trading Commission
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C.  20581
Telephone:     (202) 418-5320
Facsimile:     (202) 418-5538


Dated:  March 2, 2005

JS 44 (Rev. 11/04)



## ORIGINAL

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I.(a) PLAINTIFFS**

UNITED STATES COMMODITY FUTURES TRADING COMMISSION

**3 - 05 CV 0416 M**

**DEFENDANTS**

PREMIUM INCOME CORP., INFOREX, LTD., TRI-FOREX INTERNATIONAL, LTD. also known as TRI-FOREX, LTD. and INTERNATIONAL FOREX COMPANY, GERALD LEO ROGERS also known as JAY ROGERS and JAY RODGERS, and ALEXANDER IGOR SHEVCHENKO

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant:   **King**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**RECEIVED**

**(c)** ATTORNEY (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Richard P. Foelber
U.S. Commodity Futures Trading Commission
Three Lafayette Centre
1155 21ˢᵗ Street, N.W.
Washington, D.C. 20581

ATTORNEYS (IF KNOWN)

MAR - 2 ? 0

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | PTF |  | PTF | PTF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 |  |  |  |
|  |  |  | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 820 Copyrights | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | | ☐ 830 Patent | ☒ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | **LABOR** | ☐ 840 Trademark | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395FF) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| | ☐ 443 Housing/ Accommodations | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 444 Welfare | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 440 Other Civil Rights | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | | ☐ 540 Mandamus & Other | | ☐ 871 IRS - Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (Specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**VI. CAUSE OF ACTION** CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING (DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY):
Brief Description of cause  7 U.S.C. 6c(b)  Plaintiff alleges that defendants violated the antifraud and contract market provisions of the Commodity Exchange Act, 7 U.S.C. § 1 et seq.

**VII. REQUESTED IN COMPLAINT:**    CHECK IF THIS IS A CLASS ACTION    ☐ UNDER F.R.C.P. 23     DEMAND $     CHECK YES only if demanded in complaint:  JURY DEMAND ☐ YES  ☐ NO

**VIII. RELATED CASE(S)** (See Instructions):
IF ANY     JUDGE _____     DOCKET NUMBER _____

DATE  3.1.05     SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY
Receipt # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____